IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| STRATEGIC MANAGEMENT PARTNERS, LLC, and ASPEN SPECIALTY INSURANCE COMPANY | ) ) ) ) | Civil Action File No. 1:25-cv-05233-SEG |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY and GREENWICH INSURANCE COMPANY, | ) ) ) ) | (Removed from the State Court of DeKalb County, Georgia) |
| Defendants. | ) ) ) | |

**PLAINTIFFS' RESPONSES TO DEFENDANT GREENWICH INSURANCE COMPANY'S INTERROGATORIES**

Plaintiffs Strategic Management Partners, LLC ("SMP") and Aspen Insurance Company ("Aspen") (collectively "plaintiffs") respond to Greenwich Insurance Company's ("Greenwich") interrogatories as follows:

**General Objections**

Plaintiffs object to the Instructions and Additional Definitions sections that precede Greenwich's interrogatories to the extent that Greenwich attempts to impose a duty upon plaintiffs greater than those imposed by the Federal Rules of Civil Procedure. Further, in responding to these interrogatories, plaintiffs object to

-1-

any interrogatory that requires disclosure of information protected from discovery by the attorney-client privilege, work product privilege, or other applicable privileges in this case. Subject to and without waiving these general objections, plaintiffs respond to Greenwich's interrogatories as follows:

1.

When and how did SMP first learn of the Underlying Lawsuit?

**RESPONSE: SMP first learned of the Underlying Lawsuit on or about August 22, 2023 when its registered agent for service of process, Registered Agent Solutions, Inc., was served with the summons and complaint.**

2.

What are the material facts supporting Plaintiffs' contention in ¶ 36 of the Amended Complaint (Doc. No. 18) that "SMP timely provided notice of the Underlying Lawsuit to Greenwich and sought indemnification from Greenwich on multiple occasions following service of the complaint in the Underlying Lawsuit"? Identify the "multiple occasions" and the dates, authors, and recipients of any relevant Communications with specificity.

**RESPONSE: The Underlying Lawsuit was filed on or about August 17, 2023, and SMP first learned of the suit on August 22, 2023 when its registered agent for service of process, Registered Agent Solutions, Inc., was served with**

the summons and complaint. ATL21COV Owner, LLC ("ATL") was first notified of the Underlying Lawsuit by email dated August 23, 2023 sent by Rachelle McGill of SMP to Joseph Cohen, Harrison Wreschner, and Chase Shostak of Amity Companies LLC, which instructed ATL to notify its insurers. On August 25, 2023, Ann Bhatt of Envoy Specialty sent a correspondence to Joseph Cohen of Amity Companies LLC, copying W. Andrew Bowen of Bowen Painter LLC, which also notified ATL of the Underlying Lawsuit and instructed ATL to notify its insurers. On August 28, 2023, another letter was issued to ATL, tendering defense and indemnity. The August 28, 2023 letter was also sent by Ann Bhatt to Joseph Cohen. On October 16, 2023, counsel for SMP in the Underlying Lawsuit issued another letter to ATL, tendering defense and indemnity. The October 16, 2023 letter was sent by E. Holland Howanitz of Tyson & Mendes to Joseph Cohen.

3.

What are the material facts supporting Plaintiffs' contention in ¶ 37 of the Amended Complaint (Doc. No. 18) that "Greenwich owes SMP a duty to insure, defend, and fully indemnify it in connection with the Underlying Lawsuit"? To the extent Plaintiffs rely on the provisions of one or more insurance policies, identify them with specificity.

**RESPONSE:** **Plaintiffs object to interrogatory number 3 because it is vague, overly broad, and unduly burdensome. Plaintiffs further object to interrogatory number 3 because it demands that plaintiffs share the mental impressions and strategy of their attorneys. Subject to and without waiving these objections, plaintiffs state as follows: SMP was retained by ATL to manage the Rockwell Pointe Apartments pursuant to an agreement entered into on January 14, 2022 (the "Agreement"). The Agreement provides, in pertinent part, that ATL would obtain insurance to cover, defend, and protect both ATL and SMP. The Agreement requires ATL to obtain commercial general liability insurance, which is the type of coverage at issue here due to the nature of the claims against SMP in the Underlying Lawsuit, in the amount of not less than $5 million per occurrence and provides that the coverage limits may be achieved through the purchase of an excess or umbrella insurance policy. Further, the Agreement requires ATL to defend and indemnify SMP from and against all claims.**

**Cincinnati issued a commercial general liability policy to ATL, policy number CSU0182653, which became effective on February 3, 2022 and expired on February 3, 2023. The policy provides, in relevant part:**

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

\*    \*    \*

## SECTION II – WHO IS AN INSURED

\*    \*    \*

2.      Each of the following is also an insured:

\*    \*    \*

b.      Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

[CG 00 01 04 13, p. 10 of 17].

---

### ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name of Additional Insured Person(s) or Organization(s): | Location(s) of Covered Operations |
|---|---|
| Strategic Management Partners 125 Town Park Drive, Suite 300 Kennesaw, GA 30144 Interest: Property Management | Any location in the coverage territory |

\*    \*    \*

A.      **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

-5-

1.    Your acts or omissions; or

2.    The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

1.    The insurance afforded to such additional insured only applies to the extent permitted by law; and

2.    If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

*      *      *

D.    With respect to the insurance afforded to these additional insureds, **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance** is amended to include:

Any coverage provided herein will be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless you have agreed in a written contract or written agreement executed prior to any loss that this insurance will be primary. This insurance will be noncontributory only if you have so agreed in a written contract or written agreement executed prior to any loss and this coverage is determined to be primary.

[CSGA 435 12 13, pp. 1-2 of 2].

Greenwich issued a commercial excess/umbrella liability coverage policy to IND21ML Owner LLC, policy number PPP744000008, which became effective on May 7, 2021 and expired on May 7, 2022. ATL and the

-6-

**Rockwell Pointe Apartments were added to the policy by endorsement. The policy provides, in relevant part:**

### COMMERCIAL EXCESS/UMBRELLA LIABILITY COVERAGE

\*        \*        \*

### DEFINITIONS

\*        \*        \*

8.      "Covered contract" –
a.      "Covered contract" means:

\*        \*        \*

6)      any part of any other contract or agreement relating to the conduct of "your" business (including an indemnification of a municipality in connection with work done for the municipality) under which "you" assume the tort liability of another person or organization to pay "damages" because of "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

\*        \*        \*

16.     "Indemnitee" means a person or organization for whom an "insured" has assumed liability for "damages" due to "bodily injury" or "property damage" under a "covered contract".

17.     "Insured" –

-7-

a. Under Coverage E -- Excess Liability, "insured" means:
1) "you"; and
2) persons or organizations included as "insureds" or additional insureds in "underlying insurance".

However, such persons or organizations are "insureds" under the "terms" of this policy only to the extent that they are covered by "underlying insurance".

\* \* \*

c. Under Coverage U, "insured" also means:

1) any person or organization, except "your" "employee" or "volunteer worker", while acting as "your" real estate manager;

\* \* \*

34. "Underlying insurance" means the liability insurance coverage provided under policies shown in the Schedule of Underlying Insurance on the "declarations" for the "limits" and policy periods indicated. This includes any policies issued to replace those policies during the term of this insurance that:
a. provide at least the same "limits"; and
b. provide the same hazards insured against, except as modified by general program revisions or as agreed to by "us" in writing.

\* \* \*

**COMMERCIAL EXCESS/UMBRELLA LIABILITY COVERAGES**

**COVERAGE E – EXCESS LIABILITY**

1. Insuring Agreement

   a. "We" will pay on behalf of the "insured" those sums in excess of "underlying insurance" for which an "insured" becomes legally obligated to pay as "damages" to which this insurance applies.

   "We" have the right and duty to defend the "insured" against a "suit" seeking "damages" which may be covered under Coverage E -- Excess Liability, when the "limits" of "underlying insurance" are exhausted by the payment of claims, settlements, judgments, and/or defense costs if the applicable "limit" of "underlying insurance" is reduced by the payment of defense costs.

   \* \* \*

   d. This insurance applies only to:
      1) "bodily injury" or "property damage" that:
         a) is caused by an "occurrence" that takes place in the "coverage territory";
         b) occurs during the policy period of this policy; and
         c) is covered by "underlying insurance" or that would have been covered by "underlying insurance" but for the exhaustion of "underlying insurance" "limits" by the payment of claims, settlements, judgments, and/or defense costs;

   \* \* \*

   g. If a contract or agreement requires that coverage be provided to an "insured" who is an additional insured covered by "underlying insurance", the most "we" will pay on behalf of the additional insured is the "limit" required by the contract or agreement, less any amounts payable by any "underlying insurance".

h.      When injury or damage arising out of an exposure covered by "underlying insurance" is subject to a separate "limit" under the terms of that coverage, this Commercial Excess/Umbrella Liability Coverage will apply to injury or damage arising out of that exposure only if the separate "limit" is shown in the Schedule of Underlying Insurance.

\*      \*      \*

COVERAGE U -- UMBRELLA LIABILITY

1.      Insuring Agreement
        a.      "We" will pay on behalf of the "insured" those sums in excess of:
                1)      the "self-insured retention"; or
                2)      other insurance, excluding insurance specifically purchased by the "insured" to apply in excess of the insurance afforded by this policy, which is available to the "insured" and provides coverage with respect to injury or damage to which this policy applies;

                whichever is applicable, for which an "insured" becomes legally obligated to pay as "damages" because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies.

                "We" have the right and duty to defend the "insured" against a "suit" seeking "damages" for such "bodily injury", "property damage", or "personal and advertising injury" which may be covered under Coverage U -- Umbrella Liability.

\*      \*      \*

**SUPPLEMENTAL PAYMENTS**

\*      \*      \*

-10-

4. If "we" defend an "insured" against a "suit" and an "indemnitee" of the "insured" is also named as a party to the "suit":

a. "we" will:

1) defend that "indemnitee";

2) pay attorneys' fees incurred by "us" in the defense of that "indemnitee";

3) pay necessary litigation expenses incurred by "us"; and

4) pay necessary litigation expenses incurred by the "indemnitee" at "our" request.

b. all of the following conditions must be met:

1) the "suit" seeks "damages" against the "indemnitee" for which the "insured" has assumed the liability of the "indemnitee" in a "covered contract";

2) this insurance applies to such liability assumed by the "insured";

3) the obligation to defend, or the cost of the defense of, that "indemnitee", has also been assumed by the "insured" in the same "covered contract";

4) no conflict appears to exist between the interests of the "insured" and the interests of the "indemnitee" in the allegations in the "suit" and in the information "we" know about the "occurrence";

5) the "indemnitee" and the "insured" ask "us" to conduct and control the defense of that "indemnitee" against such "suit" and agree that "we" can assign the same counsel to defend the "insured" and the "indemnitee"; and

6) the "indemnitee" agrees to:

a) cooperate with "us" in the investigation, settlement, or defense of the "suit";

b) immediately send "us" copies of any demands, notices, summonses, or legal papers received in connection with the "suit";

c) notify any other insurer whose coverage is available to the "indemnitee";

-11-

  d) cooperate with "us" with respect to coordinating other applicable insurance available to the "indemnitee";

  e) provide "us" with written authorization to obtain records regarding the "suit";

  f) provide "us" other information related to the "suit"; and

  g) provide "us" with written authorization to conduct and control the defense of the "indemnitee" in such "suit".

If the above conditions are met, such payments will not be deemed to be "damages" for "bodily injury" or "property damage" and will not reduce the "limits", regardless of the provisions of exclusion 2.b.2) of Coverage U.

"Our" obligation to provide a defense for an "insured's" "indemnitee" and to pay for the "indemnitee's" defense and litigation costs as Supplemental Payments ceases when "we" have paid an amount equal to the applicable "limit" as the result of a judgment or settlement or when a requirement set forth under 4.b.1), 2), 3), 4), 5), and 6) above is no longer met.

**Plaintiffs' investigation of the facts is ongoing and may reveal other facts that support ¶ 37 of the Amended Complaint. Further, plaintiffs may be aware of additional supportive facts, the significance of which cannot be ascertained in light of the facts presently known to it. Therefore, plaintiffs do not waive the right to assert additional supportive facts to the extent they become known or their significance becomes known to plaintiffs after their responses to these interrogatories have been served.**

**Plaintiffs further refer Greenwich to the non-privileged documents that will be produced electronically in PDF format in response to requests for production. Plaintiffs reserve the right to supplement this response to the extent permitted by the Federal Rules of Civil Procedure and this Court's scheduling order.**

4.

What are the material facts supporting Plaintiffs' contention in ¶ 51 of the Amended Complaint (Doc. No. 18) that Aspen is entitled to recover from Greenwich "the costs it expended to defend SMP in the Underlying Lawsuit"? To the extent Plaintiffs rely on the provisions of one or more insurance policies, identify them with specificity.

**RESPONSE: Plaintiffs object to interrogatory number 4 because it is vague, overly broad, and unduly burdensome. Plaintiffs further object to interrogatory number 4 because it demands that plaintiffs share the mental impressions and strategy of their attorneys. Subject to and without waiving these objections, plaintiffs state as follows: SMP was retained by ATL to manage the Rockwell Pointe Apartments pursuant to an agreement entered into on January 14, 2022 (the "Agreement"). The Agreement provides, in pertinent part, that ATL would obtain insurance to cover, defend, and**

**protect both ATL and SMP. The Agreement requires ATL to obtain commercial general liability insurance, which is the type of coverage at issue here due to the nature of the claims against SMP in the Underlying Lawsuit, in the amount of not less than $5 million per occurrence and provides that the coverage limits may be achieved through the purchase of an excess or umbrella insurance policy. Further, the Agreement requires ATL to defend and indemnify SMP from and against all claims.**

**Cincinnati issued a commercial general liability policy to ATL, policy number CSU0182653, which became effective on February 3, 2022 and expired on February 3, 2023. The policy provides, in relevant part:**

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

*       *       *

**SECTION II – WHO IS AN INSURED**

*       *       *

2.      Each of the following is also an insured:

*       *       *

b.      Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

[CG 00 01 04 13, p. 10 of 17].

-14-

## ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name of Additional Insured Person(s) or Organization(s): | Location(s) of Covered Operations |
|---|---|
| Strategic Management Partners 125 Town Park Drive, Suite 300 Kennesaw, GA 30144 Interest: Property Management | Any location in the coverage territory |

\*    \*    \*

A.    **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1.    Your acts or omissions; or

2.    The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

However:

1.    The insurance afforded to such additional insured only applies to the extent permitted by law; and

2.    If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

\*    \*    \*

**D.**    With respect to the insurance afforded to these additional insureds, **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance** is amended to include:

Any coverage provided herein will be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless you have agreed in a written contract or written agreement executed prior to any loss that this insurance will be primary. This insurance will be noncontributory only if you have so agreed in a written contract or written agreement executed prior to any loss and this coverage is determined to be primary.

[CSGA 435 12 13, pp. 1-2 of 2].

**Greenwich issued a commercial excess/umbrella liability coverage policy to IND21ML Owner LLC, policy number PPP744000008, which became effective on May 7, 2021 and expired on May 7, 2022. ATL and the Rockwell Pointe Apartments were added to the policy by endorsement. The policy provides, in relevant part:**

**COMMERCIAL EXCESS/UMBRELLA LIABILITY COVERAGE**

\*    \*    \*

**DEFINITIONS**

\*    \*    \*

8.    "Covered contract" –
        a.    "Covered contract" means:

*　　*　　*

6)　any part of any other contract or agreement relating to the conduct of "your" business (including an indemnification of a municipality in connection with work done for the municipality) under which "you" assume the tort liability of another person or organization to pay "damages" because of "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

*　　*　　*

16.　"Indemnitee" means a person or organization for whom an "insured" has assumed liability for "damages" due to "bodily injury" or "property damage" under a "covered contract".

17.　"Insured" –
a.　Under Coverage E -- Excess Liability, "insured" means:
1)　"you"; and
2)　persons or organizations included as "insureds" or additional insureds in "underlying insurance".

However, such persons or organizations are "insureds" under the "terms" of this policy only to the extent that they are covered by "underlying insurance".
*　　*　　*

c.　Under Coverage U, "insured" also means:

-17-

1) any person or organization, except "your" "employee" or "volunteer worker", while acting as "your" real estate manager;

\* \* \*

34. "Underlying insurance" means the liability insurance coverage provided under policies shown in the Schedule of Underlying Insurance on the "declarations" for the "limits" and policy periods indicated. This includes any policies issued to replace those policies during the term of this insurance that:
   a. provide at least the same "limits"; and
   b. provide the same hazards insured against, except as modified by general program revisions or as agreed to by "us" in writing.

\* \* \*

## COMMERCIAL EXCESS/UMBRELLA LIABILITY COVERAGES

## COVERAGE E – EXCESS LIABILITY

1. Insuring Agreement

   a. "We" will pay on behalf of the "insured" those sums in excess of "underlying insurance" for which an "insured" becomes legally obligated to pay as "damages" to which this insurance applies.

   "We" have the right and duty to defend the "insured" against a "suit" seeking "damages" which may be covered under Coverage E -- Excess Liability, when the "limits" of "underlying insurance" are exhausted by the payment of claims, settlements, judgments, and/or defense costs if the applicable "limit" of "underlying insurance" is reduced by the payment of defense costs.

-18-

\*      \*      \*

d.    This insurance applies only to:
    1)    "bodily injury" or "property damage" that:
        a)    is caused by an "occurrence" that takes place in the "coverage territory";
        b)    occurs during the policy period of this policy; and
        c)    is covered by "underlying insurance" or that would have been covered by "underlying insurance" but for the exhaustion of "underlying insurance" "limits" by the payment of claims, settlements, judgments, and/or defense costs;

\*      \*      \*

g.    If a contract or agreement requires that coverage be provided to an "insured" who is an additional insured covered by "underlying insurance", the most "we" will pay on behalf of the additional insured is the "limit" required by the contract or agreement, less any amounts payable by any "underlying insurance".

h.    When injury or damage arising out of an exposure covered by "underlying insurance" is subject to a separate "limit" under the terms of that coverage, this Commercial Excess/Umbrella Liability Coverage will apply to injury or damage arising out of that exposure only if the separate "limit" is shown in the Schedule of Underlying Insurance.

\*      \*      \*

COVERAGE U -- UMBRELLA LIABILITY

1.    Insuring Agreement
    a.    "We" will pay on behalf of the "insured" those sums in excess of:
        1)    the "self-insured retention"; or

-19-

2)      other insurance, excluding insurance specifically purchased by the "insured" to apply in excess of the insurance afforded by this policy, which is available to the "insured" and provides coverage with respect to injury or damage to which this policy applies;

whichever is applicable, for which an "insured" becomes legally obligated to pay as "damages" because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies.

"We" have the right and duty to defend the "insured" against a "suit" seeking "damages" for such "bodily injury", "property damage", or "personal and advertising injury" which may be covered under Coverage U -- Umbrella Liability.

*     *     *

## SUPPLEMENTAL PAYMENTS

*     *     *

4.      If "we" defend an "insured" against a "suit" and an "indemnitee" of the "insured" is also named as a party to the "suit":

    a.      "we" will:

       1)      defend that "indemnitee";

       2)      pay attorneys' fees incurred by "us" in the defense of that "indemnitee";

       3)      pay necessary litigation expenses incurred by "us"; and

       4)      pay necessary litigation expenses incurred by the "indemnitee" at "our" request.

    b.      all of the following conditions must be met:

       1)      the "suit" seeks "damages" against the "indemnitee" for which the "insured" has assumed the liability of the "indemnitee" in a "covered

-20-

contract";

2) this insurance applies to such liability assumed by the "insured";

3) the obligation to defend, or the cost of the defense of, that "indemnitee", has also been assumed by the "insured" in the same "covered contract";

4) no conflict appears to exist between the interests of the "insured" and the interests of the "indemnitee" in the allegations in the "suit" and in the information "we" know about the "occurrence";

5) the "indemnitee" and the "insured" ask "us" to conduct and control the defense of that "indemnitee" against such "suit" and agree that "we" can assign the same counsel to defend the "insured" and the "indemnitee"; and

6) the "indemnitee" agrees to:

a) cooperate with "us" in the investigation, settlement, or defense of the "suit";

b) immediately send "us" copies of any demands, notices, summonses, or legal papers received in connection with the "suit";

c) notify any other insurer whose coverage is available to the "indemnitee";

d) cooperate with "us" with respect to coordinating other applicable insurance available to the "indemnitee";

e) provide "us" with written authorization to obtain records regarding the "suit";

f) provide "us" other information related to the "suit"; and

g) provide "us" with written authorization to conduct and control the defense of the "indemnitee" in such "suit".

If the above conditions are met, such payments will not be deemed to be "damages" for "bodily injury" or "property damage" and will not reduce the "limits", regardless of the provisions of exclusion 2.b.2) of Coverage U.

-21-

> "Our" obligation to provide a defense for an "insured's" "indemnitee" and to pay for the "indemnitee's" defense and litigation costs as Supplemental Payments ceases when "we" have paid an amount equal to the applicable "limit" as the result of a judgment or settlement or when a requirement set forth under 4.b.1), 2), 3), 4), 5), and 6) above is no longer met.

**Plaintiffs' investigation of the facts is ongoing and may reveal other facts that support ¶ 51 of the Amended Complaint. Further, plaintiffs may be aware of additional supportive facts, the significance of which cannot be ascertained in light of the facts presently known to it. Therefore, plaintiffs do not waive the right to assert additional supportive facts to the extent they become known or their significance becomes known to plaintiffs after their responses to these interrogatories have been served.**

**Plaintiffs further refer Greenwich to the non-privileged documents that will be produced electronically in PDF format in response to requests for production. Plaintiffs reserve the right to supplement this response to the extent permitted by the Federal Rules of Civil Procedure and this Court's scheduling order.**

5.

To the extent Plaintiffs respond to any of Greenwich's requests for admission to Plaintiffs with anything other than an unqualified admission, state

separately with respect to each request, and in detail and with particularity, each fact that supports Plaintiffs' failure to respond with anything other than an unqualified admission.

**RESPONSE: In response to interrogatory number 5, plaintiffs refer Greenwich to Plaintiffs' Responses to Greenwich Insurance Company's Requests for Admission, which set forth the bases for plaintiffs' responses.**

This 26th day of May, 2026.

/s/ Sarah M. MacKimm
Wayne D. Taylor
Georgia Bar No. 701275
Sarah M. MacKimm
Georgia Bar No. 299849
MOZLEY, FINLAYSON & LOGGINS LLP
1050 Crown Pointe Parkway, Suite 1500
Atlanta, Georgia 30338
Tel: (404) 256-0700
Fax: (404) 250-9355
wtaylor@mfllaw.com
smackimm@mfllaw.com

*Attorneys for plaintiffs Strategic Management Partners, LLC, and Aspen Specialty Insurance Company*

## **VERIFICATION**

STATE OF  Georgia
COUNTY OF Cherokee

Personally appeared before the undersigned officer, duly authorized to administer oaths, Cindy Batey, Principal at Strategic Management Partners, LLC, who upon being duly sworn, deposes and says that she is authorized to give this verification on behalf of plaintiff Strategic Management Partners, LLC and the information contained in the within and foregoing Plaintiffs' Responses to Defendant Greenwich Insurance Company's Interrogatories is true and correct to the best of her personal knowledge.

_Cindy Batey_

Cindy Batey
Principal
Strategic Management Partners, LLC

Sworn to and subscribed before me
this 21st day of _May_ , 2026.

_Susan L. Morrell_

Notary Public
My Commission Expires: April 20, 2029



## VERIFICATION

STATE OF _Connecticut_

COUNTY OF ~~MASSACHUSETTS~~ _Hartford_

Personally appeared before the undersigned officer, duly authorized to administer oaths, Paul Needham, Assistant Vice President at Aspen Insurance Company, who upon being duly sworn, deposes and says that he is authorized to give this verification on behalf of plaintiff Aspen Specialty Insurance Company and the information contained in the within and foregoing Plaintiffs' Responses to Defendant Greenwich Insurance Company's Interrogatories is true and correct to the best of his personal knowledge.

_Paul Needham_

Paul Needham
Assistant Vice President
Aspen Insurance Company

Sworn to and subscribed before me
this 22 day of _May_ , 2026.

_Erika C. Douglas_
Notary Public
My Commission Expires:

ERIKA C. DOUGLAS
NOTARY PUBLIC
My Commission Expires May 31, 2028

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| STRATEGIC MANAGEMENT PARTNERS, LLC, and ASPEN SPECIALTY INSURANCE COMPANY | ) ) ) ) | Civil Action File No. |
| | ) | 1:25-cv-05233-SEG |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY and GREENWICH INSURANCE COMPANY, | ) ) ) ) | (Removed from the State Court of DeKalb County, Georgia) |
| | ) | |
| Defendants. | ) | |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this date I electronically served the foregoing

***PLAINTIFFS' RESPONSES TO DEFENDANT GREENWICH INSURANCE***

***COMPANY'S INTERROGATORIES*** upon the following counsel of record:

| | |
|---|---|
| Andrew D. Horowitz | Matthew F. Boyer |
| DREW ECKL & FARNHAM, LLP | Alexia R. Roney |
| 303 Peachtree St. NE, Suite 3500 | FREEMAN MATHIS & GARY, LLP |
| Atlanta, GA 30308 | 100 Galleria Parkway, Suite 1600 |
| HorowitzA@deflaw.com | Atlanta, Georgia 30339 |
| | mboyer@fmglaw.com |
| | aroney@fmglaw.com |
| -and- | |
| | |
| James P. Ruggeri | *Attorneys for Defendant The Cincinnati* |
| Sara K. Hunkler | *Specialty Underwriters Insurance* |
| RUGGERI PARK WEINBERG LLP | *Company* |

1875 K Street NW, Suite 800
Washington, DC 20006
jruggeri@ruggerilaw.com
shunkler@ruggerilaw.com

*Attorneys for Defendant Greenwich
Insurance Company*

This 26th day of May, 2026.

/s/ Sarah M. MacKimm
Sarah M. MacKimm
Georgia Bar No. 299849