IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STRATEGIC MANAGEMENT      )
PARTNERS, LLC, and ASPEN  )
SPECIALTY INSURANCE       )
COMPANY,                  )          Civil Action File No.
                          )          1:25-cv-05233-SEG
                Plaintiffs, )
                          )
v.                        )
                          )
THE CINCINNATI SPECIALTY  )          (Removed from the State Court of
UNDERWRITERS INSURANCE    )          DeKalb County, Georgia)
COMPANY and GREENWICH     )
INSURANCE COMPANY,        )
                          )
                Defendants. )

**<u>PLAINTIFFS' RESPONSE IN OPPOSITION TO GREENWICH
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiffs Strategic Management Partners, LLC ("SMP") and Aspen

Specialty Insurance Company ("Aspen") (collectively "plaintiffs") file this brief in

opposition to defendant Greenwich Insurance Company's ("Greenwich") motion

for summary judgment [Doc. 35], respectfully showing the Court as follows:

## I.      <u>INTRODUCTION</u>

This is an action for declaratory judgment and damages concerning the

availability of insurance coverage for SMP under insurance policies issued by The

Cincinnati Specialty Underwriters Insurance Company ("Cincinnati") and

Greenwich for the fatal shooting of Larodus Reeves that occurred at the Rockwell Pointe Apartments, as well as Aspen's reimbursement for costs incurred to defend SMP in the lawsuit brought by Kenyatta Shanice Reeves currently pending in the State Court of DeKalb County.

On June 24, 2026, Greenwich filed a motion for summary judgment on all claims exhibited against it in plaintiffs' complaint for declaratory judgment. Contrary to its arguments, Greenwich is not entitled to summary judgment as a matter of law on plaintiffs' claims that Greenwich must defend and indemnify SMP (Count II) or that it must pay the costs expended by Aspen to defend SMP in the Underlying Lawsuit (Count IV). Instead, as shown by the clear and unambiguous terms of the policies, as well as the agreement entered into by ATL21COV Owner, LLC and SMP, plaintiffs are entitled to summary judgment on their claims.

For the reasons set forth in plaintiffs' motion for summary judgment [Doc. 36], and for the reasons set forth in this response brief, Greenwich's motion for summary judgment should be denied.

## II.    <u>STATEMENT OF FACTS</u>

The relevant facts are not in dispute. On March 22, 2022, Larodus Antonio Reeves ("Reeves") was shot at Rockwell Pointe Apartments, located at 4565

Covington Hwy, Decatur, DeKalb County, Georgia 30032 (the "Apartments"). [Doc. 35-1 at ¶¶ 1-3]. Reeves was pronounced dead at Grady Memorial Hospital on March 23, 2022, and Kenyetta Shanice Reeves, individually and as administrator of the estate of Larodus Antonio Reeves, filed a suit against ATL21COV Owner LLC and SMP, in the State Court of Dekalb County, Civil Action No.: 23A03773 (the "Underlying Lawsuit"). [Doc. 35-1 at ¶¶ 4-5].

On January 14, 2022, SMP and ATL21COV Owner, LLC, entered into an agreement (the "Agreement"), whereby ATL21COV Owner, LLC retained SMP to manage and operate the Apartments. [Doc. 35-1 at ¶ 9]. The Agreement provides, in pertinent part:

(g).    <u>Insurance.</u>

(a)    It is the intention of the parties hereunder to secure the broadest and most cost-effective insurance available to cover, defend and protect Owner and Manager in the operation, improvement and enhancement of the Project, including any project or construction management services performed relating to the Project. This may be accomplished by insuring both parties under the same policies. Thus, Owner shall maintain, at its expense, during the Term of this Agreement:

(i)    "All-risk" direct damage property insurance on replacement cost terms for the full value of the structure and improvements, including builder's risk insurance and demolition, debris removal and increased cost coverage where applicable, to cover physical loss or damage to the Project from fire and extended coverage perils, including but not limited to vandalism and malicious mischief;

(ii)    Commercial general liability insurance, on an occurrence (not claims – made) form, in an amount not less than five million ($5,000,000) dollars each occurrence with respect to the Property and covering personal injury, property damage, and bodily injury (including death), which includes assault and battery coverage in the foregoing amount and shall not contain any firearm exclusion or pool exclusion or any other similar exclusion. Such limits may be achieved through the purchase of an Excess or Umbrella insurance policy.

*    *    *

All policies providing for such coverage shall waive all the insurer's right of subrogation against Manager and its affiliates and their respective employees, insurers, shareholders and authorized agents, and under (ii) above, shall include Manager as an additional insured by definition. Owner shall furnish Manager original certificates of insurance, or if requested, duplicate copies of policies evidencing that such insurance is in force as of the Effective Date or such date as services are performed by Manager, whichever is earlier. Such insurance shall in all respects be the primary insurance for claims arising at or on the Project and any policy of Manager shall be excess and non-contributing in all respects. To the extent Owner uses any deductibles or self-insured retentions to reduce or mitigate premium or risk cost, such deductibles or retentions will be wholly for the account of Owner and, with respect to Manager, will be treated as though it were first-dollar insurance. Owner is required to comply with all of the terms, conditions and duties of the policy. To the extent that Owner or the Project has insurance covering any actual or potential environmental or flood, wind or other disaster liability at the Project, Owner shall undertake to include a waiver of subrogation or have Manager added as an additional insured to such policy(ies) whichever case exists. All policies will provide Manager with an unconditional right of thirty (30) days' prior written notice of the insurer's decision to cancel (ten (10) days' notice, if cancellation is for non-payment of premium).

*    *    *

- 4 -

> In cases where Owner and Manager maintain insurance policies that duplicate coverage for the Project, then Owner's policies shall provide in all respects primary coverage, without regard to any "other insurance" clauses, and Manager's insurance shall be excess and noncontributing insurance. At the commencement of this Agreement, Manager shall furnish Owner with Certificates of Insurance evidencing coverage as provided above. Neither the review nor the failure to review such certificates or any accompanying endorsements, shall constitute acceptance of waive, alter or diminish Owner's right under this Agreement.

[Doc. 35-1 at ¶ 12]. As reflected in the Agreement, ATL21COV Owner, LLC was required to maintain commercial general liability insurance coverage in an amount of not less than $5 million per occurrence, and the Agreement specifically provided that "[s]uch insurance shall in all respects be the primary insurance for claims arising at or on the Project and any policy of Manager shall be excess and non-contributing in all respects." *Id*. Further, the Agreement provided:

> [i]n cases where Owner and Manager maintain insurance policies that duplicate coverage for the Project, then Owner's policies shall provide in all respects primary coverage, without regard to any "other insurance" clauses, and Manager's insurance shall be excess and noncontributing insurance.

*Id*.

Accordingly, ATL21COV Owner, LLC obtained insurance coverage from Cincinnati and Greenwich. [Doc. 35-1 at ¶¶ 14, 23, 26; Plaintiffs' Statement of Additional Undisputed Facts at ¶ 1]. Cincinnati issued a policy of insurance,

number CSU0182653, to ATL21COV Owner, LLC dba Rockwell Pointe Apartments for the coverage period of February 3, 2022 to February 3, 2023 ("Cincinnati Policy"). [Doc. 35-1 at ¶ 14; Plaintiffs' Statement of Additional Undisputed Facts at ¶ 2]. The Cincinnati Policy reflects the following limits of insurance in its Commercial General Liability Coverage Part Declarations:

**THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS**

Attached to and forming part of POLICY NUMBER: CSU0182653    Effective date: 02/03/2022

Named Insured: KRC Ridge Apartment Homes

| LIMITS OF INSURANCE | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $ 1,000,000 | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ 100,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | $ Excluded | Any one person |
| PERSONAL & ADVERTISING INJURY LIMIT | $ 1,000,000 | Any one person or organization |
| GENERAL AGGREGATE LIMIT | | $ 2,000,000 |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | | $ 2,000,000 |

[Plaintiffs' Statement of Additional Undisputed Facts at ¶ 3]. The Cincinnati Policy also includes an Assault or Battery endorsement, which has a sublimit of $50,000.00, and an Additional Insured endorsement naming SMP is an additional insured. [Doc. 35-1 at ¶¶ 15, 17]. The Additional Insured endorsement in the Cincinnati Policy also provides:

> **D.** With respect to the insurance afforded to these additional insureds, **SECTION IV -COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance** is amended to include:

> Any coverage provided herein will be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless you have agreed in a written contract or written agreement executed prior to any loss that this insurance will be primary. This insurance will be noncontributory only if you have so agreed in a written contract or written agreement executed prior to any loss and this coverage is determined to be primary.

[Plaintiffs' Statement of Additional Undisputed Facts at ¶ 4].

Greenwich also issued a policy of insurance, number PPP744000008, for the coverage period of May 7, 2021 to May 7, 2022 ("Greenwich Policy"), in which ATL21COV Owner LLC dba Rockwell Pointe Apartments is a named insured. [Doc. 35-1 at ¶¶ 23, 26]. Under Coverage E, the Greenwich Policy provides, in relevant part:

> a.    "We" will pay on behalf of the "insured" those sums in excess of "underlying insurance" for which an "insured" becomes legally obligated to pay as "damages" to which this insurance applies.
>
> "We" have the right and duty to defend the "insured" against a "suit" seeking "damages" which may be covered under Coverage E -- Excess Liability, when the "limits" of "underlying insurance" are exhausted by the payment of claims, settlements, judgments, and/or defense costs if the applicable "limit" of "underlying insurance" is reduced by the payment of defense costs.

*    *    *

h. When injury or damage arising out of an exposure covered by "underlying insurance" is subject to a separate "limit" under the terms of that coverage, this Commercial Excess/Umbrella Liability Coverage will apply to injury or damage arising out of that exposure only if the separate "limit" is shown in the Schedule of Underlying Insurance.

[Doc. 35-1 at ¶ 27].

Under Coverage U, the Greenwich Policy provides, in relevant part:

a. "We" will pay on behalf of the "insured" those sums in excess of:

1) the "self-insured retention"; or
2) other insurance, excluding insurance specifically purchased by the "insured" to apply in excess of the insurance afforded by this policy, which is available to the "insured" and provides coverage with respect to injury or damage to which this policy applies;

whichever is applicable, for which an "insured" becomes legally obligated to pay as "damages" because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies.

"We" have the right and duty to defend the "insured" against a "suit" seeking "damages" for such "bodily injury", "property damage", or "personal and advertising injury" which may be covered under Coverage U -- Umbrella Liability.

\*     \*     \*

g. Coverage U does not apply to claims which are covered under Coverage E [Excess Liability] or would have been

- 8 -

covered except for exhaustion of "underlying insurance" "limits".

[Doc. 35-1 at ¶ 28]. The Greenwich Policy also includes an "other insurance" provision, which provides, in pertinent part:

> 18. **Insurance Under More Than One Policy** –
>
> a. Insurance under this policy is excess over any other insurance and will not contribute with any other insurance, whether the other insurance is primary, excess, contingent, or on any other basis.
>
> However, this condition will not apply to insurance specifically written as excess over this policy.

[Doc. 35-1 at ¶ 29]. The Cincinnati Policy is underlying insurance to the Greenwich Policy, and SMP is an insured under the Greenwich Policy. [Doc. 35-1 at ¶ 30].

Aspen Specialty Insurance Company issued to SMP a policy of insurance, number CR00MN821, which provided coverage for the period of July 6, 2021 to July 6, 2022, subject to the policy's terms, conditions, limitations, and exclusions ("Aspen Policy"). [Doc. 35-1 at ¶¶ 18-19]. The Aspen Policy contains an endorsement for Real Estate Property Managed, which provides, in pertinent part:

> **B.** The following is added to Paragraph **4.b.(1)** of **Other Insurance** of **Section IV – Commercial General Liability Conditions:**

**4.**     **Other Insurance**

**b.**     **Excess Insurance**

> With respect to your liability arising out of your management of property for which you are acting as real estate manager, this insurance is excess over any other valid and collectible insurance available to you, whether such insurance is primary or excess.

[Doc. 35-1 at ¶¶ 20-21].

## III.    LEGAL ARGUMENT AND CITATION OF AUTHORITY

### A. Standard on Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

### B. Contract Interpretation

Under Georgia law, "[i]nsurance is a matter of contract and the parties are bound by the terms of the policy." *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 231 S.E.2d 245, 249-50 (1976); *see Hurst v. Grange Mutual Cas. Co.*, 266 Ga. 712, 716 (1996) ("Insurance in Georgia is a matter of contract and the parties to the contract of insurance are bound by its plain and unambiguous

- 10 -

terms."). "When language in the insurance policy 'is explicit and unambiguous, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured.'" ***Natl. Cas. Co. v. Fulton County, Georgia***, No. 1:16-CV-679-WSD, 2018 WL 1523089 at *8 (N.D. Ga. Mar. 28, 2018) (*quoting* ***Georgia Farm Bureau Mut. Ins. Co. v. Smith***, 298 Ga. 716, 719, 784 S.E.2d 422, 424 (2016)).

### C. Applicability of the Greenwich Excess Policy

It is undisputed that the Cincinnati Policy is underlying insurance under the Greenwich Policy, and it is further undisputed that SMP is an insured under the Greenwich Policy. [Doc. 35-1 at ¶ 30]. As such, Coverage E under the Greenwich Policy provides coverage in this instance.

The Greenwich Policy's Schedule of Underlying Insurance requires the following minimum limits in the Cincinnati Policy: a limit of $1,000,000.00 per occurrence, a general aggregate limit of $2,000,000.00, a products/ completed operations aggregate of $2,000,000.00, and a personal and advertising injury limit of $1,000,000.00. [Doc. 35-1 at ¶ 25]. These limits are clearly satisfied as reflected in the Cincinnati Policy's Commercial General Liability Coverage Part Declarations. [Plaintiffs' Statement of Additional Undisputed Facts at ¶ 3].

Nevertheless, Greenwich asserts, based on the applicability of the Cincinnati

Policy's Assault or Battery endorsement, that a "Sublimit Condition Precedent" bars coverage entirely in this case. Under Coverage E, the Greenwich Policy provides:

> h.   When injury or damage arising out of an exposure covered by "underlying insurance" is subject to a separate "limit" under the terms of that coverage, this Commercial Excess/Umbrella Liability Coverage will apply to injury or damage arising out of that exposure only if the separate "limit" is shown in the Schedule of Underlying Insurance

[Doc. 35-1 at ¶ 27]. While such separate "limit" is not identified, Greenwich argues that because the $50,000.00 sublimit associated with the Cincinnati Policy's Assault or Battery endorsement is not included on Greenwich's form, there is no coverage for SMP at all under the Greenwich Policy.

Pursuant to the terms of the Agreement, ATL21COV Owner, LLC was required to maintain at least $5 million per occurrence in commercial general liability insurance coverage, and that the required minimum coverage limits "may be achieved through the purchase of an Excess or Umbrella insurance policy." [Doc. 35-1 at ¶ 12]. Further, the Agreement required such insurance include "assault and battery coverage in the foregoing amount…." *Id.* Accordingly, ATL21COV Owner, LLC obtained liability insurance coverage from Cincinnati and Greenwich in order to satisfy this requirement.

Greenwich's argument, here, ultimately boils down to dissatisfaction with its

own policy forms, and it should not be allowed to benefit from its own oversight. Furthermore, it was the intention of ATL21COV Owner, LLC to obtain coverage of $5 million to include assault and battery coverage, as reflected by the terms of the Agreement. As such, Greenwich is obligated to defend and indemnify SMP in the Underlying Suit, which it has failed to do.

### D.      Applicability of the Greenwich Umbrella Policy

If excess coverage under the Greenwich Policy is unavailable to SMP (which plaintiffs vehemently deny), the Greenwich Policy's umbrella coverage under Coverage U should still apply.

Contrary to Greenwich's position, the "Sublimit Condition Precedent" has no bearing on the Greenwich Policy's umbrella coverage. While it references "this Commercial Excess/Umbrella Liability Coverage" in its text, this subparagraph only appears in the Greenwich Policy's provisions regarding Coverage E. As such, according to a plain reading of the policy, its application, if any, is limited to Coverage E.

Greenwich further argues that Coverage U is inapplicable because Coverage U does not insure risks allocated to Coverage E. Specifically, the Greenwich Policy states "Coverage U does not apply to claims which are covered under Coverage E or would have been covered except for exhaustion of 'underlying

insurance' 'limits'." [Doc. 35-1 at ¶ 28]. However, neither of these scenarios are applicable here. According to Greenwich, SMP's claim is not covered under Coverage E due to the applicability of a sublimit that is not listed on its Schedule of Underlying Insurance. Based on a plain reading of the policy, this would mean that SMP's claim is not covered under Coverage E and would never be covered under Coverage E, regardless of the exhaustion of underlying limits. Once again, Greenwich is obligated to defend and indemnify SMP in the Underlying Suit, which it has failed to do.

### E.    Priority of Coverage

Greenwich further argues that, even if the Greenwich Policy offers coverage under Coverage E or Coverage U,  it would not attach until all other applicable insurance, including the Aspen Policy, is exhausted. In support of this, Greenwich cites to *Great Am. Ins. Co. v. Allied World Assurance Co. (U.S.), Inc.*, No. 1:20-CV-2984-AT, 2021 WL 6113680 (N.D. Ga. Sept. 30, 2021), *aff'd in relevant part*, *Great Am. Ins. Co. V. Allied World Assur. Co.*, 2023 WL 3736878 (11th Cir. Ga. May 31, 2023) and the general rule that "primary policies precede umbrella policies even when the primary policy includes an applicable 'excess clause'." *Great Am. Ins. Co. v. Allied World Assurance Co.*, No. 22-12496, 2023 U.S. App. LEXIS 13401, at *6 (11th Cir. May 31, 2023). However, the court missed the mark

in *Great American* by overruling the policy's clear intent: to serve as excess coverage with respect to liability arising out of management of property for which the insured is acting as a real estate manager. The Aspen Policy evidences the same clear and unambiguous intent in its "Real Estate Property Managed" endorsement, which provides:

> **B.** The following is added to Paragraph **4.b.(1)** of **Other Insurance** of **Sections IV - Commercial General Liability Conditions**:
>
> **4.    Other Insurance**
>
> **b. Excess Insurance**
>
> With respect to your liability arising out of your management of property for which you are acting as real estate manager, this insurance is excess over any other valid and collectible insurance available to you, whether such insurance is primary or excess.

[Doc. 35-1 at ¶ 21]. The inclusion of this provision reflects the Aspen Policy's intent to provide excess coverage in instances of liability arising out of SMP's management of the Apartments.

Furthermore, while the Aspen Policy contains reference to its primary coverage when the claim does not arise out of SMP's conduct as a property manager, the Aspen Policy was specifically obtained to serve in excess of the Greenwich Policy, as reflected in the language of the Agreement. Once again, ATL21COV Owner, LLC was required to maintain commercial general liability

insurance coverage in an amount of not less than $5 million per occurrence, which "may be achieved through the purchase of an Excess or Umbrella insurance policy." [Doc. 35-1 at ¶ 12]. Nevertheless, "[s]uch insurance shall in all respects be the primary insurance for claims arising at or on the Project and any policy of Manager shall be excess and non-contributing in all respects." *Id*. Further, the Agreement provided:

> [i]n cases where Owner and Manager maintain insurance policies that duplicate coverage for the Project, then Owner's policies shall provide in all respects primary coverage, without regard to any "other insurance" clauses, and Manager's insurance shall be excess and noncontributing insurance.

*Id.* This is further evidenced by the inclusion of the "Real Estate Property Managed" endorsement in the Aspen Policy. [Doc. 35-1 at ¶ 21]. Accordingly, the Aspen Policy was obtained to serve as excess insurance.

Coverage E of the Greenwich Policy provides "'We' will pay on behalf of the 'insured' those sums in excess of 'underlying insurance' for which an 'insured' becomes legally obligated to pay as 'damages' to which this insurance applies." [Doc. 35-1 at ¶ 27]. Additionally, Coverage U provides that Greenwich will pay in excess of the "self-insured retention," which is $0, or other insurance available to the insured, excluding insurance specifically purchased to apply in excess of the Greenwich Policy. [Doc. 35-1 at ¶ 28]. Here, the Cincinnati Policy is underlying

insurance, as relevant to Coverage E, and the Aspen Policy was specifically purchased to apply in excess of the Greenwich Policy, as reflected in the terms of the Agreement and relevant to Coverage U. In either event, once the Cincinnati Policy exhausted its coverage limits, as it claims it has, Greenwich should have undertaken SMP's defense in the Underlying Suit, should be next in line for indemnification, and should be required to pay all defense costs expended by Aspen to defend SMP in the Underlying Lawsuit.

## IV.   **CONCLUSION**

For all of the above-stated reasons, and for the reasons stated in their motion for summary judgment [Doc. 36], plaintiffs Strategic Management Partners, LLC, and Aspen Specialty Insurance Company respectfully requests that the Court deny defendant Greenwich Insurance Company's motion for summary judgment and grant plaintiffs' motion for summary judgment on all claims asserted against defendant Greenwich Insurance Company in their amended complaint and provide such other and further relief as this Court deems just and proper.

Respectfully submitted this 15th day of July, 2026.

/s/Wayne D. Taylor
Wayne D. Taylor
Georgia Bar No. 701275
Sarah M. MacKimm
Georgia Bar No. 299849
MOZLEY, FINLAYSON & LOGGINS

LLP
1050 Crown Pointe Parkway, Suite 1500
Atlanta, Georgia 30338
Tel: (404) 256-0700
Fax: (404) 250-9355
wtaylor@mfllaw.com
smackimm@mfllaw.com

*Attorneys for plaintiffs Strategic
Management Partners, LLC, and Aspen
Specialty Insurance Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| STRATEGIC MANAGEMENT PARTNERS, LLC, and ASPEN SPECIALTY INSURANCE COMPANY | ) ) ) ) | Civil Action File No. |
| | ) | 1:25-cv-05233-SEG |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY and GREENWICH INSURANCE COMPANY, | ) ) ) ) | (Removed from the State Court of DeKalb County, Georgia) |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed *Plaintiffs' Response In Opposition To Greenwich Insurance Company's Motion For Summary Judgment* with the Clerk using the CM/ECF system, which will automatically send an e-mail notification of such filing to all attorneys of record, including:

Andrew D. Horowitz
DREW ECKL & FARNHAM, LLP
303 Peachtree St. NE, Suite 3500
Atlanta, GA 30308
HorowitzA@deflaw.com

-and-

Matthew F. Boyer
Alexia R. Roney
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
mboyer@fmglaw.com
aroney@fmglaw.com

- 19 -

James P. Ruggeri                           *Attorneys for Defendant The Cincinnati*
Sara K. Hunkler                            *Specialty Underwriters Insurance*
RUGGERI PARK WEINBERG LLP                  *Company*
1875 K Street NW, Suite 800
Washington, DC 20006
jruggeri@ruggerilaw.com
shunkler@ruggerilaw.com

*Attorneys for Defendant Greenwich*
*Insurance Company*

I further certify that I prepared the foregoing document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

This 15th day of July, 2026.

/s/Wayne D. Taylor
Wayne D. Taylor
Georgia Bar No. 701275