IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| STRATEGIC MANAGEMENT PARTNERS, LLC, and ASPEN SPECIALTY INSURANCE COMPANY, | ) ) ) ) | |
| | ) | Civil Action File No. |
| | ) | 1:25-cv-05233-SEG |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY and GREENWICH INSURANCE COMPANY, | ) ) ) ) | (Removed from the State Court of DeKalb County, Georgia) |
| | ) | |
| Defendants. | ) | |

**REPLY BRIEF OF PLAINTIFFS STRATEGIC MANAGEMENT PARTNERS, LLC AND ASPEN SPECIALTY INSURANCE COMPANY TO DEFENDANT GREENWICH INSURANCE COMPANY'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Strategic Management Partners, LLC ("SMP") and Aspen Specialty Insurance Company ("Aspen") (collectively "plaintiffs") respectfully submit this reply to defendant Greenwich Insurance Company's ("Greenwich") response to plaintiffs' motion for summary judgment [Doc. 46], respectfully showing the Court as follows:

## I.    <u>INTRODUCTION</u>

Plaintiffs are entitled to summary judgment because there is no genuine issue of material fact as to plaintiffs' claims that Greenwich must defend and indemnify SMP (Count II) or that it must pay the costs expended by Aspen to defend SMP in the Underlying Lawsuit (Count IV), as shown by the clear and unambiguous terms of the policies, as well as the agreement entered into by ATL21COV Owner, LLC and SMP. Greenwich's arguments in its response are simply not sufficient to preclude summary judgment for the reasons discussed more fully below. Thus, summary judgment in favor of plaintiffs is proper.

## II.    <u>THERE ARE NO MATERIAL DISPUTED ISSUES OF FACT</u>

Despite Greenwich's attempt to muddy the waters, the relevant facts are not in dispute. On January 14, 2022, SMP and ATL21COV Owner, LLC, entered into an agreement (the "Agreement"), whereby ATL21COV Owner, LLC retained SMP to manage and operate the Apartments. [Doc. 46-1 at ¶ 1; Doc. 35-1 at ¶ 9]. The Agreement provides, in pertinent part:

> (g).    <u>Insurance.</u>
>
> (a)    It is the intention of the parties hereunder to secure the broadest and most cost-effective insurance available to cover, defend and protect Owner and Manager in the operation, improvement and enhancement of the Project, including any project or construction management services performed relating to the Project. This may be accomplished by insuring both parties under the same policies. Thus,

Owner shall maintain, at its expense, during the Term of this Agreement:

(i)   "All-risk" direct damage property insurance on replacement cost terms for the full value of the structure and improvements, including builder's risk insurance and demolition, debris removal and increased cost coverage where applicable, to cover physical loss or damage to the Project from fire and extended coverage perils, including but not limited to vandalism and malicious mischief;

(ii)   Commercial general liability insurance, on an occurrence (not claims – made) form, in an amount not less than five million ($5,000,000) dollars each occurrence with respect to the Property and covering personal injury, property damage, and bodily injury (including death), which includes assault and battery coverage in the foregoing amount and shall not contain any firearm exclusion or pool exclusion or any other similar exclusion. Such limits may be achieved through the purchase of an Excess or Umbrella insurance policy.

*     *     *

All policies providing for such coverage shall waive all the insurer's right of subrogation against Manager and its affiliates and their respective employees, insurers, shareholders and authorized agents, and under (ii) above, shall include Manager as an additional insured by definition. Owner shall furnish Manager original certificates of insurance, or if requested, duplicate copies of policies evidencing that such insurance is in force as of the Effective Date or such date as services are performed by Manager, whichever is earlier. Such insurance shall in all respects be the primary insurance for claims arising at or on the Project and any policy of Manager shall be excess and non-contributing in all respects. To the extent Owner uses any deductibles or self-insured retentions to reduce or mitigate premium or risk cost, such deductibles or retentions will be wholly for the account of Owner and, with respect to Manager, will be treated as though it were first-dollar insurance. Owner is required to comply with all of the terms, conditions and duties of the policy. To the extent

that Owner or the Project has insurance covering any actual or potential environmental or flood, wind or other disaster liability at the Project, Owner shall undertake to include a waiver of subrogation or have Manager added as an additional insured to such policy(ies) whichever case exists. All policies will provide Manager with an unconditional right of thirty (30) days' prior written notice of the insurer's decision to cancel (ten (10) days' notice, if cancellation is for non-payment of premium).

\*    \*    \*

In cases where Owner and Manager maintain insurance policies that duplicate coverage for the Project, then Owner's policies shall provide in all respects primary coverage, without regard to any "other insurance" clauses, and Manager's insurance shall be excess and noncontributing insurance. At the commencement of this Agreement, Manager shall furnish Owner with Certificates of Insurance evidencing coverage as provided above. Neither the review nor the failure to review such certificates or any accompanying endorsements, shall constitute acceptance of waive, alter or diminish Owner's right under this Agreement.

[Doc. 46-1 at ¶ 2; Doc. 35-1 at ¶ 12]. As reflected in the Agreement, ATL21COV Owner, LLC was required to maintain commercial general liability insurance coverage in an amount of not less than $5 million per occurrence, and the Agreement specifically provided that "[s]uch insurance shall in all respects be the primary insurance for claims arising at or on the Project and any policy of Manager shall be excess and non-contributing in all respects." *Id*. Further, the Agreement provided:

[i]n cases where Owner and Manager maintain insurance policies that duplicate coverage for the Project, then Owner's policies shall provide

- 4 -

in all respects primary coverage, without regard to any "other insurance" clauses, and Manager's insurance shall be excess and noncontributing insurance.

*Id.*

Accordingly, ATL21COV Owner, LLC obtained insurance coverage from the Cincinnati Specialty Underwriters Insurance Company ("Cincinnati") and Greenwich. [Doc. 46-1 at ¶¶ 4, 7; Doc. 46-2 at ¶¶ 1, 7]. It is undisputed that the Cincinnati policy, number CSU0182653, provides a per occurrence coverage limit of $1,000,000 and a products/completed operations and general aggregate limit of $2,000,000. [Doc. 46-2 at ¶ 3]. The Cincinnati policy also includes an Assault or Battery endorsement, which has a sublimit of $50,000.00, and an Additional Insured endorsement naming SMP is an additional insured. [Doc. 46-1 at ¶ 5; Doc. 46-2 at ¶4].

Greenwich also issued an applicable policy of insurance. [Doc. 46-2 at ¶ 7].[1] Under Coverage E, the Greenwich policy provides, in relevant part:

> a.    "We" will pay on behalf of the "insured" those sums in excess of "underlying insurance" for which an "insured"

---

[1] Incredibly, Greenwich now disputes the fact that it " issued a policy of insurance, number PPP744000008, for the coverage period of May 7, 2021, to May 7, 2022," despite the fact that its very own requests for admission to plaintiffs define the Greenwich Policy as "Policy No. PPP744000008, effective 5/7/21 to 5/7/22…." [Doc. 37-1]. In any event, the issuance of the Greenwich policy, as attached to Greenwich's requests for admission to plaintiffs, and its contents are not in dispute.

becomes legally obligated to pay as "damages" to which this insurance applies.

"We" have the right and duty to defend the "insured" against a "suit" seeking "damages" which may be covered under Coverage E -- Excess Liability, when the "limits" of "underlying insurance" are exhausted by the payment of claims, settlements, judgments, and/or defense costs if the applicable "limit" of "underlying insurance" is reduced by the payment of defense costs.

\*     \*     \*

h.     When injury or damage arising out of an exposure covered by "underlying insurance" is subject to a separate "limit" under the terms of that coverage, this Commercial Excess/Umbrella Liability Coverage will apply to injury or damage arising out of that exposure only if the separate "limit" is shown in the Schedule of Underlying Insurance.

[Doc. 46-2 at ¶ 10].

Under Coverage U, the Greenwich policy provides, in relevant part:

a.     "We" will pay on behalf of the "insured" those sums in excess of:

1)     the "self-insured retention"; or
2)     other insurance, excluding insurance specifically purchased by the "insured" to apply in excess of the insurance afforded by this policy, which is available to the "insured" and provides coverage with respect to injury or damage to which this policy applies;

whichever is applicable, for which an "insured" becomes legally obligated to pay as "damages" because of "bodily

injury", "property damage", or "personal and advertising injury" to which this insurance applies.

"We" have the right and duty to defend the "insured" against a "suit" seeking "damages" for such "bodily injury", "property damage", or "personal and advertising injury" which may be covered under Coverage U -- Umbrella Liability.

\* \* \*

g.    Coverage U does not apply to claims which are covered under Coverage E [Excess Liability] or would have been covered except for exhaustion of "underlying insurance" "limits".

[Doc. 46-2 at ¶ 11]. The Greenwich policy also includes an "other insurance" provision, which provides, in pertinent part:

**18.    Insurance Under More Than One Policy –**

a.    Insurance under this policy is excess over any other insurance and will not contribute with any other insurance, whether the other insurance is primary, excess, contingent, or on any other basis.

However, this condition will not apply to insurance specifically written as excess over this policy.

[Doc. 46-2 at ¶ 12].

Aspen issued to SMP a policy of insurance, number CR00MN821, which provided coverage for the period of July 6, 2021 to July 6, 2022, subject to the policy's terms, conditions, limitations, and exclusions. [Doc. 46-1 at ¶14].  The

- 7 -

Aspen policy contains an endorsement for Real Estate Property Managed, which provides, in pertinent part:

**B.** The following is added to Paragraph **4.b.(1)** of **Other Insurance** of **Section IV – Commercial General Liability Conditions:**

**4.** **Other Insurance**

**b.** **Excess Insurance**

With respect to your liability arising out of your management of property for which you are acting as real estate manager, this insurance is excess over any other valid and collectible insurance available to you, whether such insurance is primary or excess.

[Doc. 46-1 at ¶15].

## III.   LEGAL ARGUMENT AND CITATION OF AUTHORITY

### A. Applicability of the Greenwich Umbrella Policy

Contrary to Greenwich's arguments, Greenwich policy's umbrella coverage under Coverage U should still apply if excess coverage under the Greenwich policy is unavailable to SMP (which plaintiffs vehemently deny).

From the beginning, Greenwich has adamantly maintained that SMP's claim is not covered under Coverage E for various, meritless reasons. Now, it has decided to wholly ignore this history in favor of the erroneous argument that because the Cincinnati policy qualifies as "underlying insurance" under Coverage

E, Coverage U can never apply. This argument is unavailing.

The Greenwich policy specifically states that "Coverage U does not apply to claims which are covered under Coverage E or would have been covered except for exhaustion of 'underlying insurance' 'limits'." [Doc. 46-2 at ¶ 11]. According to Greenwich, SMP's claim is not covered under Coverage E due to the applicability of a sublimit that is not listed on its Schedule of Underlying Insurance. Based on a plain reading of the Greenwich policy, this would mean that SMP's claim is not covered under Coverage E and would never be covered under Coverage E, regardless of the exhaustion of underlying limits. As such, the plain language of the policy does not prevent the application of Coverage U in the very scenario that Greenwich has asserted. Thus, Greenwich is obligated to defend and indemnify SMP in the Underlying Suit, which it has failed to do.

**B. Applicability of the Greenwich Excess Policy**

Greenwich further asserts, based on the applicability of the Cincinnati policy's Assault or Battery endorsement, that a "Sublimit Condition Precedent" bars coverage entirely in this case. Under Coverage E, the Greenwich policy provides:

> h.   When injury or damage arising out of an exposure covered by "underlying insurance" is subject to a separate "limit" under the terms of that coverage, this Commercial Excess/Umbrella Liability Coverage will apply to injury or damage arising out of

that exposure only if the separate "limit" is shown in the Schedule of Underlying Insurance

[Doc. 46-2 at ¶ 10]. While such separate "limit" is not identified, Greenwich argues that because the $50,000.00 sublimit associated with the Cincinnati policy's Assault or Battery endorsement is not included on Greenwich's form, there is somehow no coverage for SMP at all under the Greenwich policy.

The Greenwich policy's Schedule of Underlying Insurance requires the following minimum limits in the Cincinnati policy: a limit of $1,000,000.00 per occurrence, a general aggregate limit of $2,000,000.00, a products/completed operations aggregate of $2,000,000.00, and a personal and advertising injury limit of $1,000,000.00. [Doc. 46-2 at ¶ 8]. It is undisputed these limits are satisfied by the Cincinnati policy. [Doc. 46-2 at ¶ 3].

Greenwich further attempts to argue that there is also no coverage based on the fact that the Cincinnati policy was a replacement policy that cannot lower the attachment point of the Greenwich policy. Specifically, the "scheduled Nationwide policy [that the Cincinnati policy replaced] provides per occurrence limits of $1,000,000 and products completed operations and aggregate limit of $2,000,000." Greenwich further states that "[t]here is no reference in the schedule to a separate limit for assault and battery claims." [Doc. 46 at p. 9]. This is exactly the point – the schedule does not reference a separate limit for assault and battery claims, and

the Greenwich policy satisfies the minimum limits stated in the schedule. Furthermore, the Nationwide policy has not been provided so it is unknown whether it actually contained a separate limit for assault battery claims.

Greenwich's argument, here, ultimately boils down to dissatisfaction with its own policy forms, and it should not be allowed to benefit from its own oversight. Furthermore, it was the intention of ATL21COV Owner, LLC to obtain coverage of $5 million to include assault and battery coverage, as reflected by the terms of the Agreement. As such, Greenwich is obligated to defend and indemnify SMP in the Underlying Suit, which it has failed to do.

### C.    Priority of Coverage

Greenwich then argues that, even if the Greenwich policy offers coverage under Coverage E or Coverage U,  it would not attach until all other applicable insurance, including the Aspen policy, is exhausted. In support of this, Greenwich cites *Great Am. Ins. Co. v. Allied World Assurance Co. (U.S.), Inc.*, No. 1:20-CV-2984-AT, 2021 WL 6113680 (N.D. Ga. Sept. 30, 2021), *aff'd in relevant part*, *Great Am. Ins. Co. V. Allied World Assur. Co.*, 2023 WL 3736878 (11th Cir. Ga. May 31, 2023), and the general rule that "primary policies precede umbrella policies even when the primary policy includes an applicable 'excess clause'." *Great Am. Ins. Co. v. Allied World Assurance Co.*, No. 22-12496, 2023 U.S. App.

LEXIS 13401, at *6 (11th Cir. May 31, 2023). However, the court missed the mark in **Great American** by improperly overruling the policy's clear intent: to serve as excess coverage with respect to liability arising out of the management of property for which the insured is acting as a real estate manager. The Aspen policy evidences the same clear and unambiguous intent in its "Real Estate Property Managed" endorsement, which provides:

> **B.** The following is added to Paragraph **4.b.(1)** of **Other Insurance** of **Sections IV - Commercial General Liability Conditions**:
>
> **4.    Other Insurance**
>
> **b. Excess Insurance**
>
> With respect to your liability arising out of your management of property for which you are acting as real estate manager, this insurance is excess over any other valid and collectible insurance available to you, whether such insurance is primary or excess.

[Doc. 46-1 at ¶15]. The inclusion of this provision reflects the Aspen policy's intent to provide excess coverage in instances of liability arising out of SMP's management of the Apartments.

Furthermore, while the Aspen policy contains reference to its primary coverage when the claim does not arise out of SMP's conduct as a property manager, the Aspen policy was specifically obtained to serve in excess of the Greenwich policy, as reflected in the language of the Agreement. Once again,

ATL21COV Owner, LLC was required to maintain commercial general liability insurance coverage in an amount of not less than $5 million per occurrence, which "may be achieved through the purchase of an Excess or Umbrella insurance policy." [Doc. 46-1 at ¶ 2; Doc. 35-1 at ¶ 12]. Nevertheless, "[s]uch insurance shall in all respects be the primary insurance for claims arising at or on the Project and any policy of Manager shall be excess and non-contributing in all respects." *Id*. The Agreement also provided:

> [i]n cases where Owner and Manager maintain insurance policies that duplicate coverage for the Project, then Owner's policies shall provide in all respects primary coverage, without regard to any "other insurance" clauses, and Manager's insurance shall be excess and noncontributing insurance.

*Id.* This is further evidenced by the inclusion of the "Real Estate Property Managed" endorsement in the Aspen policy. [Doc. 46-1 at ¶15]. Accordingly, the Aspen policy, as well as any other policy obtained by SMP[2], was specifically procured to serve as excess insurance.

Coverage E of the Greenwich policy provides "'We' will pay on behalf of the 'insured' those sums in excess of 'underlying insurance' for which an 'insured' becomes legally obligated to pay as 'damages' to which this insurance applies." [Doc. 46-2 at ¶ 10]. Additionally, Coverage U provides that Greenwich will pay in

---

[2] This includes but is not limited to any other policy, such as any such excess policy issued by Obsidian Specialty Insurance Company.

excess of the "self-insured retention," which is $0, or other insurance available to the insured, excluding insurance specifically purchased to apply in excess of the Greenwich policy. [Doc. 46-2 at ¶ 11]. Here, the Cincinnati policy is underlying insurance, as relevant to Coverage E, and the Aspen policy was specifically purchased to apply in excess of the Greenwich policy, as reflected in the terms of the Agreement and relevant to Coverage U. In either event, once the Cincinnati policy exhausted its coverage limits, as it claims it has, Greenwich should have undertaken SMP's defense in the Underlying Suit, should be next in line for indemnification, and should be required to pay all defense costs expended by Aspen to defend SMP in the Underlying Lawsuit.

### D. **CONCLUSION**

For all of the above-stated reasons, and for the reasons stated in their motion for summary judgment [Doc. 36], plaintiffs Strategic Management Partners, LLC, and Aspen Specialty Insurance Company respectfully requests that the Court grant plaintiffs' motion for summary judgment on all claims asserted against defendant Greenwich Insurance Company in their amended complaint and provide such other and further relief as this Court deems just and proper.

Respectfully submitted this 29th day of July, 2026.

/s/Wayne D. Taylor
Wayne D. Taylor
Georgia Bar No. 701275
Sarah M. MacKimm
Georgia Bar No. 299849
MOZLEY, FINLAYSON & LOGGINS LLP
1050 Crown Pointe Parkway, Suite 1500
Atlanta, Georgia 30338
Tel: (404) 256-0700
Fax: (404) 250-9355
wtaylor@mfllaw.com
smackimm@mfllaw.com

*Attorneys for plaintiffs Strategic Management Partners, LLC, and Aspen Specialty Insurance Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| STRATEGIC MANAGEMENT PARTNERS, LLC, and ASPEN SPECIALTY INSURANCE COMPANY | ) ) ) ) | Civil Action File No. |
| | ) | 1:25-cv-05233-SEG |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY and GREENWICH INSURANCE COMPANY, | ) ) ) ) ) | (Removed from the State Court of DeKalb County, Georgia) |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed ***Reply Brief of Plaintiffs Strategic Management Partners, LLC and Aspen Specialty Insurance Company to Defendant Greenwich Insurance Company's Response to Plaintiffs' Motion for Summary Judgment*** with the Clerk using the CM/ECF system, which will automatically send an e-mail notification of such filing to all attorneys of record, including:

Andrew D. Horowitz
DREW ECKL & FARNHAM, LLP
303 Peachtree St. NE, Suite 3500
Atlanta, GA 30308

Matthew F. Boyer
Alexia R. Roney
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600

- 16 -

HorowitzA@deflaw.com

-and-

James P. Ruggeri
Sara K. Hunkler
RUGGERI PARK WEINBERG LLP
1875 K Street NW, Suite 800
Washington, DC 20006
jruggeri@ruggerilaw.com
shunkler@ruggerilaw.com

*Attorneys for Defendant Greenwich Insurance Company*

Atlanta, Georgia 30339
mboyer@fmglaw.com
aroney@fmglaw.com

*Attorneys for Defendant The Cincinnati Specialty Underwriters Insurance Company*

I further certify that I prepared the foregoing document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

This 29th day of July, 2026.

/s/Wayne D. Taylor
Wayne D. Taylor
Georgia Bar No. 701275